No. 26-______

In The

# Fourth Circuit Court of Appeals

IN RE THE UNITED STATES OF AMERICA, PETITIONER

*ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT*

## PETITION FOR A WRIT OF MANDAMUS


Laura Day Taylor
Jennifer R. Bockhorst
Jonathan Jones
S. Cagle Juhan

Assistant United States Attorneys
310 First Street
Roanoke, Virginia 24011
(540) 857-2250

*Attorneys for Petitioner, the United States of America*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

QUESTION PRESENTED...........................................................................4

RELIEF SOUGHT .....................................................................................4

FACTS NECESSARY FOR THE QUESTION PRESENTED ................................5

REASONS WHY THE WRIT SHOULD ISSUE ...........................................9

I. THE GOVERNMENT'S RIGHT TO RELIEF IS CLEAR AND INDISPUTABLE..........................................................................9

A. Section 924(e) is an element of the greater ACCA-eligible offense, and thus a violation of § 922(g)(1) is a lesser included offense of § 924(e). ..........................................................10

1. *Apprendi* and its progeny established that sentencing enhancements that increase the penalty for a crime are elements of that crime. ..................................................10

2. Under *Erlinger* and *Apprendi*, § 924(e) is an element of the greater ACCA-eligible offense. ..........................................12

3. Section 922(g) is therefore a lesser included offense of § 924(e). ..........................................................................13

B. A defendant cannot plead guilty to a lesser-included offense over the government's objection. ...............................................13

C. The district court's reasoning conflicts with existing case law. .........17

1. The district court misunderstood the application of *Apprendi* and erroneously concluded that the Supreme Court created a sentencing enhancement, not an element......................................17

2. The district court erred in finding a distinction between the Sections 922(g)/924(e) construct and other similar statutory schemes. ....................19

3. The statutory structure of § 924 does not undermine the conclusion that the ACCA adds an element to § 922(g). ............21

4. The district court overlooked binding Supreme Court precedent in concluding that harmless error analysis could not apply to an *Erlinger* error if the separate occasions inquiry is an element of the offense. ....................22

II. NO ALTERNATIVE REMEDY EXISTS. ....................24

III. THE COURT SHOULD EXERCISE ITS DISCRETIONARY WRIT AUTHORITY DUE TO THE PREJUDICE TO THE GOVERNMENT AND OTHER SERIOUS CONSEQUENCES OF ALLOWING THE PARTIAL PLEA ....................25

A. The partial plea procedure interferes with the jury's role to render judgment on the entire crime, not just certain elements. ....................25

B. The partial plea procedure prejudices the government. ....................26

C. The partial plea procedure encroaches on both legislative and executive functions. ....................27

D. Without mandamus, the partial plea procedure could proliferate while evading this Court's review ....................28

CONCLUSION ....................30

CERTIFICATE OF COMPLIANCE ....................31

CERTIFICATE OF SERVICE ....................31

## INTRODUCTION

The United States of America respectfully seeks a writ of mandamus directing the district court to vacate Defendant Demetrius Perry's partial guilty plea. The government recognizes the extraordinary nature of its request, but mandamus is warranted and necessary.

The district court erroneously allowed Perry, over the government's objection, to plead guilty to some elements of his charged offense while proceeding to trial – currently set for May 19 – on other elements of the offense. This error alone warrants mandamus. But the district court's error is compounded by the fact it let Perry plead to the elements that establish a lesser-included offense, while proceeding to trial only on the greater offense, which implicates double jeopardy and other concerns.

The mandamus standard is satisfied here: (1) the right to relief – the vacatur of the guilty plea – is clear and undisputable, because the district court clearly and undisputably erred in allowing the defendant to enter a partial guilty plea; (2) the government has no alternative remedies; and (3) the prejudice to the government in this case, as well as concern over the proliferation of this errant practice in other cases, warrants the Court's exercise of its discretionary mandamus power.

This is an Armed Career Criminal Act (ACCA) case. A grand jury charged Perry with being a felon in possession of a firearm while an armed career criminal, in violation of 18 U.S.C. § 922(g)(1) and § 924(e), which the government will refer

to as the "ACCA-eligible offense." Over the government's objection, the district court allowed Perry to plead guilty to § 922(g)(1) but have a jury trial on § 924(e). The district court reasoned that § 924(e) is not an element of the crime, but instead purely a sentencing enhancement, and so the defendant was not actually entering a partial plea.

As to the first requirement for mandamus, the district court clearly erred in refusing to treat the ACCA's elements as elements of the criminal offense. Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Erlinger v. United States*, 602 U.S. 821 (2024), there is no question ACCA elements are elements of the offense. And the law is clear that a defendant who wishes to plead guilty must plead guilty to the entire offense. He may not plead guilty to some elements and demand a jury trial on others, i.e., enter a partial guilty plea. A corollary to this noncontroversial principle is that a defendant cannot plead guilty to a lesser-included offense of a greater-charged offense without the government's agreement. Here, Perry is charged with: (1) the lesser-included offense of possessing a firearm as a felon; and (2) the greater, aggravated offense of possessing a firearm as a felon while an armed career criminal (i.e., after three serious drug offenses that were committed on different occasions). Thus, Perry could have pleaded guilty to the entire ACCA-eligible offense or gone to trial on the entire ACCA-eligible offense (with or without stipulating to elements of the offense). But what Perry should not have been allowed

to do is plead guilty to some elements of the offense over the government's objection and proceed to trial on other elements.

As to the second prong, the government has no alternative remedy to mandamus. The government could not appeal following either a conviction as the prevailing party, or an acquittal, which would preclude retrial under double-jeopardy principles.

As to the third prong, this Court should exercise its discretion and grant the writ. This is a felon-in-possession case. Yet by permitting Perry to pick and choose the elements of the offense to which he pleads guilty, the jury will not decide possession of a firearm at all. Perry's partial plea means the jury will enter mid-trial, to decide an abstract sentencing question divorced of its context – a confusing inquiry that will prejudice the government considerably and is improper under *Old Chief v. United States*, 519 U.S. 172 (1997). The district court itself observed the jury would be "baffled" by its role. ECF 132 at 44.

And as discussed below, there are a host of other complications with permitting a partial plea to ACCA-eligible offenses, including speedy trial and double jeopardy implications. Additionally, this statute is one of the government's most frequently employed tools of criminal enforcement, and there are other statutes that have sentencing enhancements that are elements of the underlying crime just like this one. Surely other defendants will attempt to enter partial pleas that prejudice

the government if this case is permitted to proceed. This Court should intervene and ward off the proliferation of the improper partial plea procedure.

Lastly, the government appreciates the district court wrestled with this question, and the government does not cavalierly seek mandamus. But there is need for clarity on this important issue, and mandamus is the government's only avenue. The government thus respectfully petitions for a writ of mandamus directing the district court to vacate the partial guilty plea. Perry can then choose to plead to, or go to trial on, the entire ACCA-eligible offense.

## QUESTION PRESENTED

Whether, after *Erlinger v. United States*, 602 U.S. 821 (2024), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the district court improperly held that an ACCA-eligible offense is *not* a single aggravated crime, and improperly allowed Perry to plead guilty to only *some* elements of the offense, specifically, a violation of 18 U.S.C. § 922(g)(1), while demanding a jury trial on the remaining elements of the offense, specifically the ACCA elements in § 924(e)?

## RELIEF SOUGHT

The Court should order the district court to vacate the defendant's partial guilty plea.

## FACTS NECESSARY FOR THE QUESTION PRESENTED

On July 31, 2023, law enforcement arrested Perry at a motel room in Virginia, and seized a pistol and ammunition there. Perry, a convicted felon, admitted possessing the pistol. *United States v. Perry*, No. 1:25CR00011, Tr., 36-39, Mar. 13, 2026; ECF 132 (W.D.Va.).

A federal grand jury charged Perry in a three-count indictment. ECF 23. Count One charged Perry with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Id*. It also alleged that Perry is an Armed Career Criminal who faces an enhanced sentence under 18 U.S.C. § 924(e)(1), due to three prior convictions for serious drug offenses committed on different occasions. *Id*.

Without objection, the government moved to bifurcate the guilt and penalty phases of the jury trial to avoid prejudice to Perry. ECF 35. As to Count One, the government argued, in light of *Erlinger*, the jury is required to find that the three prior "serious drug offense" convictions occurred on occasions different to one another. *Id*. at 4. By bifurcating trial, the jury could decide guilt prior to hearing detailed evidence of the defendant's prior criminal history. The district court granted the motion. ECF 37.

For reasons not relevant here, the government moved to dismiss Counts Two and Three. ECF 51, 52. As a result, Perry faced only a single count of felon-in-possession as an armed career criminal.

On February 18, 2026, Perry filed a notice of change of plea. ECF 110. He sought to plead guilty to violating § 922(g)(1), but "dispute[d] the applicability" of § 924(e) and requested a trial for that "phase" only. *Id.* at 1. The government opposed Perry's partial plea. ECF 119. It argued, under *Erlinger*, § 922(g)(1) is a lesser-included offense of § 924(e) and together they form a single aggravated crime. *Id.* at 2. It also argued that taking a partial plea to only the § 922(g)(1) component would be improper because the defendant has not pleaded to every element of the charged offense, and defendants may neither pick and choose the elements of the offense to which they plead, nor plead to a lesser offense without the government's consent. *Id.* at 7-9.

The district court held a hearing on whether a partial guilty plea is permissible. ECF 121. It acknowledged the government's position is a "logical extension or application of *Erlinger*." ECF 132 at 9. It also emphasized the government's arguments "are more than valid," and "arguably may prove at some point to be correct." *Id*. at 16**.**

Nonetheless, the court rejected the government's position. *Id.* at 9, 16-20. It held the ACCA elements are *not* elements of a single aggravated offense and thus § 922(g)(1) was not a lesser-included offense of the aggravated ACCA-eligible offense. *See* ECF 132 at 17-22. It concluded the ACCA elements are only a sentence-

enhancing penalty provision divorced from the elements of the crime itself. *Id.* at 18-19.

The district court articulated four reasons for its decision. First, it noted 18 U.S.C. § 924(c) is entitled "Penalties," which it thought offered "some persuasive information." *Id.* at 16-17. Second, in the court's view, *Erlinger* did not explicitly state it was creating a lesser- and greater- offense. *Id.* at 17-18. Third, it opined that § 924(e) is dissimilar to other statutes because the statute requires a defendant first be "convicted" of § 922(g) before becoming applicable to a defendant. *Id.* at 17-19 (citing *inter alia United States v. Dennison*, 2026 WL 509328, *2 (4th Cir. Feb. 24, 2026)). And, fourth, the court observed the Fourth Circuit has applied harmless error analysis to *Erlinger* errors in other cases, and extrapolated that: "Surely, no Court of Appeals would let a sentencing court find that the defendant had committed a separate substantive offense, greater offense, subjecting him to higher penalties that could stand on appeal simply because a jury could have come to the same conclusion." *Id.* at 20.

Despite rejecting the government's argument that § 924(e) is a greater offense to § 922(g), the court ruled it would "require" as a "prophylactic measure" that Perry waive any double jeopardy challenge to having the ACCA trial. *Id.* at 21-22.

During a pre-hearing meeting in the judge's chambers, Perry's counsel expressed concern about his client's willingness to waive any double jeopardy

arguments, and specifically argued the waiver was unnecessary. *Id*. at 11-12. After the court's ruling that a waiver would be required, Perry and his counsel conferred, and Perry agreed to a waiver as follows:

> THE COURT: As a condition of going forward with your plea today and in this manner, are you waiving any claim of double jeopardy that you may have as a result of employing this two-step procedure?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you discussed that issue of double jeopardy with Mr. Murphy?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And after talking to him, you understand what the double jeopardy issue could be, and understanding that, it is your preference and you want to exercise your right to waive any double jeopardy that you might have in the future?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 35; *see also id*. at 22.

The Court then set a trial date for the § 924(e) elements for May 19, 2026. *Id.* at 44.[1]

[1] The government is moving the district court to continue the May 19 trial date. If there are speedy trial concerns, the government submits the ends of justice would support a continuance in light of this Petition. *See*, *e.g.*, 18 U.S.C. § 3161(h)(7); *see also* 18 U.S.C. § 3161(h)(1)(C). But if this Court determines § 924(e)(1) is not a greater offense, there would be no speedy trial issue at all.

## REASONS WHY THE WRIT SHOULD ISSUE

The common-law writ of mandamus, codified at 28 U.S.C. § 1651(a), provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Mandamus is an "extraordinary" remedy reserved for "extraordinary causes," such as "circumstances amounting to a judicial usurpation of power … or a clear abuse of discretion." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004)[2]. The petitioner must satisfy three conditions to obtain the writ. *Id.* First, the petitioner must "have no other adequate means to attain the relief he desires." *Id.* Second, a right to the writ must be "clear and indisputable." *Id.* at 381. Third, the issuing court, exercising its discretion, must be satisfied that the writ is appropriate under the circumstances. *Id.* "These hurdles, however demanding, are not insuperable." *Id.*

Here, the government has satisfied all three prongs, and this case presents the extraordinary circumstance in which mandamus is warranted and necessary.

### I. THE GOVERNMENT'S RIGHT TO RELIEF IS CLEAR AND INDISPUTABLE.

The government seeks vacatur of Perry's guilty plea. The right to that relief is clear and indisputable because the district court clearly erred in holding that § 924(e) is not an element of the ACCA-eligible offense and in allowing Perry to enter a

[2] Internal citations and quotations are generally omitted unless otherwise noted.

partial guilty plea to only § 922(g)(1). As explained below, under *Apprendi* and its progeny, § 924(e) is an element of the ACCA-eligible offense, which necessarily means that § 922(g) is a lesser included offense of § 924(e). Because a defendant cannot plead guilty to a lesser included offense without the government's consent, it was clear error to allow Perry to plead guilty to only § 922(g).

### A. Section 924(e) is an element of the greater ACCA-eligible offense, and thus a violation of § 922(g)(1) is a lesser included offense of § 924(e).

#### *1.* Apprendi *and its progeny established that sentencing enhancements that increase the penalty for a crime are elements of that crime.*

The Supreme Court held in *Apprendi* that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 111 (2013) (discussing *Apprendi*, 530 U.S. at 483, n.10, 490). Although some statutes enacted before 2000 had sections listing "sentencing enhancements,"[3] "[a]ny possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding." *Apprendi*, 530

[3] *See Jones v. United States*, 526 U.S. 227, 232 (1999) ("some statutes come with the benefit of provisions straightforwardly addressing the distinction between elements and sentencing factors").

U.S. at 478. The Supreme Court thus rejected any legislative attempt to create a new category of "sentencing enhancements." It clarified the Sixth Amendment requires any fact that increases the penalty range to be indicted by a grand jury and found beyond a reasonable doubt by a petit jury. *Id.* at 476, 490.

In subsequent cases, the Supreme Court articulated the *Apprendi* rule as being elemental: "Consistent with common-law and early American practice, . . . any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' *are elements of the crime*." *Alleyne*, 570 U.S. at 111 (emphasis added); *see also Mathis v. United States*, 579 U.S. 500, 518 (2016) ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements.").

*Alleyne* repeated this holding multiple times:

- "[A]ny fact that increased the prescribed statutory maximum sentence must be an element *of the offense* to be found by the jury."
- *Apprendi* held "a fact is by definition an element *of the offense* . . . if it increases the punishment above what is otherwise legally prescribed."
- "[I]t follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient *of the offense*."
- "A fact that increases a sentencing floor, thus, forms an essential ingredient *of the offense*."

*Alleyne*, 570 U.S. at 106, 107–08, 112, 113 (emphasis added).

Thus, whenever the minimum or maximum penalty for the offense is increased based upon a "statutory sentencing enhancement," that enhancement becomes a euphemism for "element" of a greater crime.

2. *Under* Erlinger *and* Apprendi*, § 924(e) is an element of the greater ACCA-eligible offense.*

Section 924(e)(1) clearly increases both the minimum and maximum penalties for a felon's unlawful possession of a firearm under § 922(g)(1). Where the government can show (1) the defendant previously committed three violent felonies or serious drug offenses; and (2) those prior crimes occurred on separate occasions, § 924(e)(1) pushes the maximum sentence to life imprisonment and the mandatory minimum to fifteen years. 18 U.S.C. § 924(e)(1); *Erlinger*, 602 U.S. at 825-26. Consistent with *Apprendi*, the Supreme Court clarified in *Erlinger* that the separate-occasions inquiry thus must be proven to a jury.[4] *Id*. at 838-39. Accordingly, that inquiry is necessarily an element, and the combination of § 922(g)(1) and § 924(e)(1) is necessarily the greater ACCA-eligible offense. *Id.*

[4] The Supreme Court, in *Erlinger*, rejected the argument that § 924(e)(1) fell within the remaining *Apprendi* exception, the sole fact of a prior conviction. *See Almendarez-Torres v. United States*, 523 U.S. 224, 243, 246-47 (1998). Because § 924(e)(1) required proof not just of prior convictions, but also that they occurred on separate occasions, *Apprendi* required findings from a jury.

*3. Section 922(g) is therefore a lesser included offense of § 924(e).*

The fact that the occasions inquiry is an actual element of the ACCA-eligible offense places § 922(g) and § 924(e) firmly within the *Blockburger* rule – they become lesser and greater offenses. *See Blockburger v. United States*, 284 U.S. 299 (1932). "[T]he classic relation of the lesser included offense to the greater offense" is where "the very same conduct violates two statutes, one which is fully subsumed within the other." *Barrett v. United States*, 607 U.S. ---, 146 S.Ct. 482, 491 (2026). Although § 924(e) may be called a "sentencing enhancement" in common parlance, the fact remains that § 922(g) is fully subsumed within § 924(e) and under the law that makes § 922(g) a lesser-include offense of § 924(e). *See id.*[5] ("all lesser included offenses are the 'same' as their greater cousins under *Blockburger*").

**B. A defendant cannot plead guilty to a lesser-included offense over the government's objection.**

There was a clear abuse of discretion, creating a clear and indisputable right to relief, because the ruling below improperly let Perry fashion his own plea for something less than what the government charged and intended to prove.

[5] *Barrett* additionally addressed the question of whether Congress intended separate penalties for the statutes at issue, 18 U.S.C. § 924(c) and § 924(j). There is no dispute here that the ACCA was intended to create a greater penalty in lieu of the otherwise-applicable penalty for § 922(g), found in § 924(a)(8).

Defendants cannot plead guilty to a lesser-included offense without the government's consent. When a defendant pleads guilty, jeopardy attaches to any greater or lesser offense of the count to which he pled; in other words, the defendant cannot separately be prosecuted for any of the "same" crimes. *See United States v. Turner*, 829 F.2d 37, at *2 (4th Cir. 1987) (unpublished) ("[U]pon the court's acceptance of the May 5 guilty plea, jeopardy attached as to all counts . . . ."); *Burgess v. Griffin*, 585 F. Supp. 1564, 1571 (W.D.N.C.), *aff'd*, 743 F.2d 1064 (4th Cir. 1984) ("Jeopardy therefore attached when petitioner's guilty plea was accepted by the court . . . .") (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)); *see also Currier v. Virginia*, 585 U.S. 493, 500 (2018) ("Historically, courts have treated greater and lesser-included offenses as the same offense for double jeopardy purposes, so a conviction on one normally precludes a later trial on the other."). Thus, if a defendant pleads to a lesser-included offense over the government's objection, the defendant could unilaterally (and improperly) preclude the government from prosecuting any greater offenses. *See United States v. Midgett*, 488 F.3d 288, 298 (4th Cir. 2007) (rejecting defendant's attempt to "unilaterally arrange his own plea bargain"); *United States v. Canty*, 422 F.2d 358, 359 (4th Cir. 1970) (affirming district court's refusal to allow the defendant to plead to a lesser offense in the absence of an agreement with the government); *see also Ricketts v. Adamson*, 483 U.S. 1, 8 (1987); *Brown v. Ohio*, 432 U.S. 161, 165–69 (1977); *see also United*

*States v. Gray*, 448 F.2d 164, 168 (9th Cir. 1971) (granting mandamus petitions where defendants pleaded to lesser-included offense over the government objection because "[o]f notable significance is the requirement that defendant is called on to *plead to the charge* in the indictment or information") (emphasis in original).

The Fourth Circuit's decision in *Midgett* is on point. Count II charged the *Midgett* defendant with the lesser-included crime of bank robbery by force under 18 U.S.C. § 2113(a), while Count III charged a greater offense under § 2113(d) for committing a § 2113(a) violation that jeopardizes someone's life. *Id*. at 291, 298. Midgett sought to plead guilty to Count II only. The court refused, holding that Count II was a lesser-included offense of Count III "and that the Government should have the opportunity to prove the greater offense." *Id*. at 293. The Fourth Circuit affirmed, holding that Midgett's contention that "the district court erred in declining his offer to plead guilty to Count II" was "squarely foreclosed by controlling precedent." *Id*. at 297–98 (citing *Canty*, 422 F.2d at 359).

The Sixth Circuit's decision in *United States v. Thomas*, 142 F.4th 412 (6th Cir. 2025), further highlights this point, specifically within the context of a § 922(g)(1) offense and § 924(e)(1)'s ACCA elements. *Thomas* dealt with an *Erlinger* error – that is, the government, prior to the Supreme Court's *Erlinger* decision, had successfully prosecuted the defendant for violating § 922(g)(1); but rather than put the factual § 924(e)(1) questions to the jury, the district court,

consistent with longstanding practice in every circuit, had imposed the enhancement on the basis of its own sentencing findings. *Id*. at 416. The *Thomas* court recognized that, in light of *Erlinger*, "§ 922(g)(1) and § 924(e)(1) convictions are related, lesser and greater offenses," but the court nevertheless held the error was harmless in these circumstances, affirming the decision without requiring a remand for a follow-on jury trial about the greater § 924(e)(1) offense. *Id*. at 420-421.

In reaching that conclusion, the court was not blind to the issues such a remand might present. As the first concurrence explains, because "*Erlinger* makes § 922(g)(1) and § 924(e)(1) lesser and greater offenses," a trial solely on the different-occasions determination question could "present a Double Jeopardy problem" and "raise a thicket of potential and thorny double jeopardy issues . . . ." *Id*. at 427 (Cole, J., concurring). And the second concurrence confirms the government would "be barred from a second bite under the Double Jeopardy Clause" if it fails to initially prove the applicability of § 924(e)(1). *Id*. at 432-33 (Nalbandian, J., concurring). So although *Thomas* considered whether an *Erlinger* error could be resolved on harmless-error grounds (rather than being remanded for jury trial), it illustrates the problems with the district court's analysis and the necessary interplay between double jeopardy requirements and post-hoc proceedings on greater-included offenses.

The upshot of the district court's decision is an erroneous partial plea that rejects *Apprendi*, *Alleyne*, and *Erlinger*'s creation of a lesser- and greater-included offense structure in 18 U.S.C. § 922(g)(1) and § 924(e). It contravenes precedent from the Supreme Court, this Court, and sister circuits. And it unnecessarily creates a potential double jeopardy trap that could preclude the government from holding serious criminals accountable for serious crimes.

### C. The district court's reasoning conflicts with existing case law.

The district court explained various reasons why it believed § 922(g) is not a lesser-included offense of § 924(e), but all run headlong into contrary precedent and thus none withstand scrutiny.

#### *1. The district court misunderstood the application of* Apprendi *and erroneously concluded that the Supreme Court created a sentencing enhancement, not an element.*

The district court first reasoned that the § 924(e) separate-occasions element is not actually an element of the crime, because the *Erlinger* Court did not use the word element in its opinion. ECF 135 at 17. Respectfully, the district court is wrong, and its reasoning cannot be squared with *Apprendi* and its progeny.

It is of no account that the Supreme Court did not call the occasions inquiry an "element" in *Erlinger*. *Erlinger* was not decided in a vacuum. It is only the latest

of a long string of cases identifying and discussing *Apprendi* errors.[6] And in those cases the Supreme Court has repeatedly reaffirmed – including in *Erlinger* itself – that *Apprendi* rejected efforts by legislatures to create so-called sentencing enhancements that are anything other than traditional elements of an offense that must be proven to a jury. *Erlinger*, 602 U.S. at 843-48 ("We have been down this road before."); *see also, e.g., Alleyne*, 570 U.S. at 111 ("any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime,"); *Mathis*, 579 U.S. at 518 ("[i]f statutory alternatives carry different punishments . . . they must be elements").

The closest support for the district court's analysis may come from *Ring v. Arizona*, 536 U.S. 584 (2002), which held the *Apprendi* rule applies to aggravating circumstances in a death penalty case, even though such factors may not be traditionally thought of as elements. But a careful reading of *Ring* supports the opposite conclusion. The *Ring* Court made clear the aggravating factors are elements as to the *degree* of the offense. Arizona had argued there was a distinction "between elements of an offense and sentencing factors," but the Court concluded: "As to elevation of the maximum punishment . . . *Apprendi* renders the argument

---

[6] *See, e.g., Ring v. Arizona*, 536 U.S. 584 (2002); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005); *Cunningham v. California*, 549 U.S. 270 (2007); *Southern Union Co. v. United States*, 567 U.S. 343 (2012); *Alleyne*, 570 U.S. 99; *United States v. Haymond*, 588 U.S. 634 (2019).

untenable." *Ring*, 536 U.S. at 604-05. Among its citations, it included a quote from *Apprendi* proving the point: "[w]hen the term 'sentencing enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, *it is the functional equivalent of an element of a greater offense* than the one covered by the jury's guilty verdict." *Ring*, 536 U.S. at 604-05 (quoting *Apprendi*, 530 U.S. at 494 n.19) (emphasis added); *see also id*. at 599 (quoting earlier dissent by Justice Stevens explaining, "Aggravators 'operate as statutory "elements" of capital murder under Arizona law . . . because in their absence, [the death] sentence is unavailable.'").

The take-away is that any fact that must be proven to the jury is an element of the offense – whether it is required to establish guilt or the degree or severity of the offense. Paired with the *Blockburger* rule, the district court was incorrect in finding that § 924(e) is a sentencing enhancement rather than an element of a greater offense.

2. *The district court erred in finding a distinction between the Sections 922(g)/924(e) construct and other similar statutory schemes.*

Next, the district court rejected the government's argument that § 924(e) must function just like other statutory schemes that include aggravating enhancements subject to the *Apprendi* rule. The court cited a string of Fourth Circuit cases for the proposition that guilt must be found on § 922(g) prior to the application of § 924(e) and concluded they prove this statutory scheme is different from other statutes. ECF

135 at 18. It also opined that all other statutes require an act by the defendant and not "status" as § 924(e) does. *Id.* at 6. Again, the district court was incorrect.

As *Ring* demonstrates, the *Apprendi* rule applies in the same way to aggravating factors that affect the degree of the offense or increase the penalty range. And the Arizona death penalty statute is not the only example. There are other examples of similarly structured statutory schemes, recognized to create lesser and greater offenses, where the enhancing element only applies if the guilt is established on the underlying offense. Distributing drugs near a school in violation of 21 U.S.C. § 860(a) is a greater offense of a plain distribution in violation of 21 U.S.C. § 841(a), the lesser-included offense. *United States v. Parker*, 30 F.3d 542, 553 (4th Cir. 1994). Violating 18 U.S.C. § 924(c)(1)(A)(i), by using a firearm during and in relation to a violent felony or drug trafficking crime, is a lesser-included offense of § 924(j), causing the death of a person through the use of a firearm in violation of § 924(c). *Barrett v. United States*, 146 S. Ct. 482, 491 (2026).

Moreover, the statutory text of § 924(e) does not mandate that a person be *convicted* before it is triggered. It mandates the "person . . . *violates* section 922(g)." 18 U.S.C. § 924(e). The *Erlinger* Court suggested a bifurcated trial is one procedure

that could reduce unnecessary prejudice to the defendant, but it did not suggest – nor does any other law establish – that a bifurcated trial is required. *See* 602 U.S. at 847.[7]

Finally, the district court's focus on proving a defendant's "status" rather than an act was misplaced. A "status" element is not unique, as far as elements go. Indeed, the felon-in-possession crime under § 922(g)(1) requires proof of status (i.e., a prior felony conviction) as an element of the crime. *See* 18 U.S.C. § 922(g)(1). There is nothing inherent about a defendant's "status" that renders it a mere sentencing factor rather than an element of the offense.

*3. The statutory structure of § 924 does not undermine the conclusion that the ACCA adds an element to § 922(g).*

In another example of its misunderstanding of the *Apprendi* rule, the district court began its analysis with the statutory structure, finding it "persuasive" that § 924(e) is listed under a section titled "Penalties." ECF 132 at 17. The very purpose of the *Apprendi* rule is to wipe away distinctions based upon statutory headings. "The dispositive question . . . is one not of form, but of effect." *Ring*, 536 U.S. at 585 (citing *Apprendi*, 536 U.S. at 494).

---

[7] The government's proposed bifurcation here would have involved successive proceedings with the same jury, allowing the government its right to present the entire story of the offense without prejudicing the defendant. *See Old Chief*, 519 U.S. at 187-88. That is distinct from the effect of the district court's partial plea approach, where the question of guilt on the possession of firearm is resolved by a plea to a judge while leaving a newly impaneled jury to resolve a sentencing question devoid of any context.

In fact, many statutes affected by *Apprendi* have similar statutory constructions, where the aggravating factors are set out in in separate provisions with titles such as "Penalties" or "Sentencing Enhancements." For example, the enhancing drug quantities in § 841(b)(1) "must be treated as an element of an aggravated drug trafficking offense," but are listed under the heading "Penalties." *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc).

And, perhaps most telling, is that *both* the lesser and greater offenses of 18 U.S.C. § 924(c) and § 924(j) are found in the same "Penalties" section as § 924(e) – yet certainly there is no dispute these provisions establish independent offenses. *See Barrett*, 146 S.Ct. 482.

4. *The district court overlooked binding Supreme Court precedent in concluding that harmless error analysis could not apply to an* Erlinger *error if the separate occasions inquiry is an element of the offense.*

The district court also relied heavily on the Fourth Circuit's decision in *United States v. Blackmon*, No. 22-4576, 2026 WL 624484, at *2-3 (4th Cir. Mar. 5, 2026), in which the Fourth Circuit applied harmless error analysis to an *Erlinger* error. ECF 132 at 19-20. The district court concluded that *Blackmon* was proof that § 924(e) is not an element of the ACCA-eligible offense, because if it were, the Fourth Circuit would not apply harmless error to *Erlinger* errors and would instead find structural error. ECF 132 at 20; *see also id*. at 20-21.

This analysis is the most glaringly incorrect of all the court's reasoning. *Apprendi* errors are – and always have been – subject to harmless error analysis. The year before *Apprendi*, the Supreme Court held unequivocally "the omission of an element is an error that is subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 15 (1999).

As a result, on *Apprendi*-based appeals, courts have employed harmless or plain error review to determine if a remedy is warranted. Post-*Apprendi*, this Court sitting *en banc* affirmed the omission of the drug weight element from the indictment was plain error in a § 841 prosecution that affected substantial rights, but declined to notice that error because "[t]here simply can be no doubt . . . the jury would have found [the defendant] guilty beyond a reasonable doubt" of the drug weight. *Promise*, 255 F.3d at 158-64. Similarly, after *Booker* established the mandatory Sentencing Guidelines were an *Apprendi* violation, *Booker* errors were reviewed on either harmless or plain error review. *United States v. Rodriguez*, 433 F.3d 411, 415-16 (4th Cir. 2006).

Moreover, the *Neder* holding applies not just to *Apprendi* errors, but to all element-omission errors. After the Supreme Court ruled in *Rehaif v. United States*, 588 U.S. 225, 229 (2019), that § 922(g) requires – notably, as here, by way of § 924 – an additional mens rea element, it affirmed in *Greer v. United States*, the longstanding failure to present that element to the jury was not structural error. 593

U.S. 503, 513-14 (2021). Instead, either harmless error or (as was the case in *Greer*) plain error applied.

In sum, that harmless-error review applies to an *Erlinger* error does not disprove that § 924(e) contains an element of the ACCA-eligible offense.

## II. NO ALTERNATIVE REMEDY EXISTS.

For a writ of mandamus, the petitioner "must have no other adequate means to attain the relief [it] desires." *Cheney*, 542 U.S. at 380. That is the case here.

The government cannot obtain interlocutory review because the court's ruling does not satisfy the prerequisites of 18 U.S.C. § 3731. Thus, absent mandamus, a jury will be empaneled and at that point, the district court's error will become unreviewable. If Perry is found "guilty" of the § 924(e) elements, "any appeal would be moot, and any alleged error would necessarily be harmless." *In re United States*, 945 F.3d 616, 624 (2d Cir. 2019). And if the jury does not find the § 924(e) elements, the government would be precluded from appeal on double jeopardy grounds. *Id.*[8]; *accord United States v. Amante*, 418 F.3d 220, 222 (2d Cir. 2005) (granting government mandamus to prevent division of § 922(g) elements).

[8] The district court "require[d]" Perry to waive double jeopardy if he wanted to enter his partial plea. ECF 132 at 21–22. But the waiver only ensures that the ACCA-enhancement trial will not be precluded by double jeopardy under *Blockburger*. *Id.* at 22, 35. The waiver does not permit the government to retry Perry if the jury "acquits" on the § 924(e) elements.

## III. THE COURT SHOULD EXERCISE ITS DISCRETIONARY WRIT AUTHORITY DUE TO THE PREJUDICE TO THE GOVERNMENT AND OTHER SERIOUS CONSEQUENCES OF ALLOWING THE PARTIAL PLEA

The final prong for mandamus is whether the Fourth Circuit should exercise its discretion to issue the writ. This Court must be satisfied that "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. Here, the partial plea procedure is erroneous in manifold ways that implicate fundamental tenets of the justice system. The partial plea procedure undercuts the jury's core function of rendering judgment on the entire crime, and it prejudices the government's ability to try the full offense as crafted by Congress and as charged by the grand jury. The Court should thus have "little trouble concluding that mandamus is appropriate here." *In re United States*, 945 F.3d at 628.

### A. The partial plea procedure interferes with the jury's role to render judgment on the entire crime, not just certain elements.

The district court's partial plea procedure improperly strips the jury of its core function of deciding a defendant's guilt by rendering a unanimous verdict on all the elements of a crime. "[T]he jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and *draw the ultimate conclusion of guilt or innocence*." *United States v. Ramirez-Castillo*, 748 F.3d 205, 214 (4th Cir. 2014) (emphasis in original). Trial courts are thus "foreclosed from instructing juries *not to consider* certain elements of a crime, even if the case

involves a stipulation encompassing those elements." *United States v. Muse*, 83 F.3d 672, 680 (4th Cir. 1996 (emphasis in original) ("A court may not by-pass the jury and enter its own finding that the element has been established."). That is because to "remove from the jury's consideration an element of the crime would . . . violate the very foundation of the jury system." *Id.* at 679. In short, the procedure ordered by the district court prevents the jury from performing its full function. *Ramirez-Castillo*, 748 F.3d at 214.

**B. The partial plea procedure prejudices the government.**

The partial plea procedure also prejudices the government, because the prosecution can no longer present its case in the manner and scope it sees fit (within the rules of evidence and bounds of caselaw). The government assumes the jury will be instructed that Perry has been found guilty of the § 922(g) offense, or that those elements are not before it, and that the jury must assess only the § 924(e) elements. How that instruction will read is presently unknown and not governed by existing law or procedure. But no matter how the jury instruction is crafted, there will be significant prejudice to the government.

As the Supreme Court has held, the government may "place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." *Old Chief*,

519 U.S. at 188. But at the ACCA trial, the government will be prohibited from presenting its full felon-in-possession case to the jury. Indeed, Perry has already moved to exclude the government from presenting certain evidence at the ACCA trial. The partial plea procedure thus forces the government to ask the jury to convict even though the jury has only heard a random sliver of the defendant's criminal conduct. Because the jury will not have heard the facts underlying the § 922(g) "conviction," the jury will not have sufficient context to return a fair verdict.

In addition, the jury is likely to (1) be confused about its role; and (2) have potential ill-will to the government for being empaneled to decide such a narrow and confusing issue divorced from context. Even the district court remarked, "the jury is going to be a little baffled about what it's doing and what it's not doing." ECF 132 at 44. Asking the jury to return a verdict divorced from the context of the criminal prosecution thus increases the likelihood of jury nullification or an otherwise unfounded acquittal.

### C. The partial plea procedure encroaches on both legislative and executive functions.

The Court also should exercise its mandamus discretion because the district court's error affects separation of powers. When a mandamus issue "implicates the separation of powers, the Court of Appeals must also ask, as part of [a clear abuse of discretion] inquiry, whether the District Court's actions constituted an unwarranted impairment of another branch in the performance of its constitutional

duties." *Cheney*, 542 U.S. at 390. Holding a half-trial on only the § 924(e) elements intrudes on both the Legislative and Executive branches.

As to Congress, "permitting the removal of [an] element from the jury's consideration would have the impermissible effect of allowing the district court to modify a criminal statute enacted by Congress by eliminating through stipulation one of the elements of the crime." *United States v. Milton*, 52 F.3d 78, 81 (4th Cir. 1995)[9]. As to the Executive Branch, "removal" of an element of a charged crime "from the jury's consideration prevents the government from having its case decided by the jury, and changes the very nature of the charged crime." *Id.* at 81. "[B]e it Congressional mandate or the duty of the jury to make a totally informed judgment, there is virtual judicial unanimity in the belief that the jury must be informed of *all* the elements of *the crime charged*." *Muse*, 83 F.3d at 679 (emphasis added).

### D. Without mandamus, the partial plea procedure could proliferate while evading this Court's review.

Lastly, left undisturbed, the partial plea procedure could spread quickly in an unreviewable manner. Defendants may ask district courts to replicate the erroneous partial plea procedure not just for § 924(e) offenses, but for other crimes with aggravating offenses treated as "sentencing enhancements." And yet still the government's only remedy would be to seek a petition for writ of mandamus.

---

[9] Abrogated on unrelated grounds.

There are a host of reasons to stave off such proliferation now. The partial plea upends well-settled plea and trial procedures. In exchange, it unnecessarily creates a host of complications concerning double jeopardy, the voluntariness of the partial plea, speedy trial, and how to instruct the jury at the partial trial.

For example, on the issue of double jeopardy, the district court required Perry to waive any double jeopardy challenge to the partial plea procedure. In other words, the district court compelled a conditional guilty plea. Although the compelled condition currently inures to the benefit of the government, it invites Perry (assuming he is convicted at the ACCA trial) to argue in a post-conviction petition that he should be permitted to undo his plea. ECF 132 at 21–22, 35. And if in another case, the district court permits the partial plea procedure over the government's objection, and the defendant does *not* waive double jeopardy, then the defendant can plead to the § 922(g) and try to assert double jeopardy as a defense at his ACCA trial.

On the issue of speedy trial, if § 924(e) is an element of the ACCA-eligible offense, but if this Court allows the partial plea procedure to proceed, then the Speedy Trial Act may still apply to the ACCA trial. While that ramification may be addressable, it illustrates why this Court should issue mandamus and provide clarity on this process.

And on the issue of jury instructions, again the need for clarity warrants the Court's exercise of discretion in granting the writ. There are no existing procedures for an ACCA-element-only trial. The district court admitted as much: "Ordinarily I wouldn't need a lot of help with instructions, but I'm going to need some help with this." ECF 132 at 44. Rather than creating entirely new procedures for a trial that should not exist in the first place, the Court should exercise its discretion and intervene now.

## CONCLUSION

For all of the above-stated reasons, the United States respectfully requests the Fourth Circuit grant the writ of mandamus and direct the district court to vacate the defendant's partial guilty plea.

Respectfully submitted,

/s/ Laura Day Taylor
Laura Day Taylor
Jennifer R. Bockhorst
Jonathan Jones
S. Cagle Juhan

Assistant United States Attorneys

## CERTIFICATE OF COMPLIANCE

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word for Microsoft 365. I further certify that this brief does not exceed 7800 words or 30 pages, excluding the table of contents, this certificate, and the certificate of service. I understand that a material misrepresentation can result in the Court's striking the filing and imposing sanctions.

/s/ Laura Day Taylor
Laura Day Taylor
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on May 1, 2026, I electronically filed the foregoing Petition with the Clerk of the Court using the CM/ECF System; emailed a copy of the Petition to the district court; hand-delivered a hard copy of the Petition to the Clerk of Court for the Western District of Virginia; and emailed a copy of the Petition to Danny Murphy, counsel of record for Defendant Perry.

/s/ Laura Day Taylor
Laura Day Taylor
Assistant United States Attorney